IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| RUSSELL MORTON, JR.,<br>Plaintiff,<br><br>v.<br><br>SANOFI-AVENTIS U.S. LLC, *et al.*,<br>Defendants. | ) | Civil Action No. 3:25CV143 (RCY) |

**MEMORANDUM OPINION**

In this products liability action, *pro se* Plaintiff Russell Morton, Jr. ("Plaintiff") brings suit against Defendants Sanofi-Aventis U.S. LLC and Regeneron Pharmaceuticals (collectively "Defendants") stemming from injuries allegedly related to his prescription use of Dupixent. The case is before the Court on Defendants' Motion to Dismiss, filed pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court grants the Motion to Dismiss with respect to Counts Two, Three, and Five, and denies the Motion to Dismiss with respect to Counts One and Four.[1]

## I. RELEVANT PROCEDURAL HISTORY

Plaintiff initiated this action on February 26, 2025, by submitting his Motion for Leave to Proceed *in forma pauperis* ("IFP Application"). ECF No. 1. Counsel for Defendants noticed their appearance on March 24, 2025, and filed a Motion to Dismiss on that same date. ECF Nos. 2–3.

[1] On September 23, 2026, the Court issued an Order granting in part and denying in part the Motion to Dismiss, promising an opinion to follow. Order, ECF No. 26. This Memorandum Opinion explains the Court's reasoning underpinning that Order.

The Court denied Defendants' Motion to Dismiss without prejudice, as Plaintiff's IFP Application was still pending. ECF No. 7.

Plaintiff filed an Amended Complaint on May 20, 2025. Am. Compl., ECF No. 8. The Court denied Plaintiff's IFP Application on October 8, 2025, finding that Plaintiff's income was sufficient to pay the filing fee. ECF No. 10. Plaintiff filed a second IFP Application on October 21, 2025, which was eventually granted on November 4, 2025. ECF Nos. 11–12. The Court determined Plaintiff's Amended Complaint, ECF No. 8, was the operative complaint and directed the Clerk to prepare summons packets for service. ECF No. 12.

On November 21, 2025, the summonses were returned unexecuted. ECF No. 17. Notwithstanding the returned summonses, Defendants filed their Motion to Dismiss the Amended Complaint and Memorandum in Support on November 26, 2025. Mot. Dismiss, ECF No. 18; Mem Supp., ECF No. 19. The Court issued Plaintiff a Notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising him on the pending dispositive motion and his opportunity to respond. ECF No. 21. Plaintiff timely filed his Response in Opposition to Defendants' Motion to Dismiss on December 10, 2025. Resp. Opp'n, ECF No. 24. Defendants filed their Reply on December 16, 2025, Def.'s Reply Supp. Mot. Dismiss ("Reply"), ECF No. 25, rendering the Motion to Dismiss ripe for review.

## II. RULE 12(b)(5) ANALYSIS

The Court will address Defendants' Rule 12(b)(5) argument up front. Defendants seek dismissal pursuant to Rule 12(b)(5) based on a failure to effectuate service of process, to the extent that Defendants were not properly served on a timely basis. Mot. Supp. 3 n.1, ECF No. 19. Because the Court granted Plaintiff's IFP Application and authorized service on November 4, 2025, *see* ECF No. 12, Defendants argue that Rule 4(m) requires service of process to be effectuated within 90 days, making the service deadline February 2, 2026. Mem. Supp. 3 n.1.

Courts have held that when a defendant has otherwise responded to a plaintiff's complaint and challenged the merits through a Rule 12(b)(6) motion, defendants waive formal service of process. *See, e.g., Gallant v. Deutsche Bank Nat. Tr. Co.*, 2010 WL 1540053, at *3 (W.D. Va. Apr. 16, 2010) ("Although the defendant maintains that it has not been properly served with process, the defendant nonetheless argues that the plaintiff's complaint fails to state a claim upon which relief may by granted. By choosing to address the merits of the plaintiff's claims and appearing voluntarily for that purpose, the defendant has made a general appearance. As a result, the court concludes that the defendant has waived formal service of process in this case, and that the case must be decided on the merits."); *United States v. Martin*, 356 F. Supp. 2d 621, 624 (W.D. Va. 2005) ("Regardless of whether the Government effected adequate service of process upon the defendants under Virginia law, the defendants' actions in responding to the Government's complaint clearly constituted a waiver of process in this case." (citing *Gilpin v. Joyce*, 515 S.E.2d 124 (Va. 1999))).

By deciding to litigate on the merits their Rule 12(b)(6) motion, Defendants have waived formal service of process. Thus, the Court does not consider Defendants' Rule 12(b)(5) argument and will instead address Defendants' Motion to Dismiss under Rule 12(b)(6).

**III. LEGAL STANDARD**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true [the plaintiff's] well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* At the motion to dismiss stage, the Court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and whose authenticity is unchallenged and matters of public record subject to judicial notice. *Id.*

Although a *pro se* complaint is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(internal quotation marks omitted), such deference "does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys.*, LLC, 959 F.3d 605, 618 (4th Cir. 2020). Nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023).

## IV. FACTUAL ALLEGATIONS

Plaintiff is a resident of Chesterfield County, Virginia. Am. Compl. ¶ 5, ECF No. 8. Defendant Sanofi-Aventis U.S. LLC is a pharmaceutical company with its principal office located in Bridgewater, New Jersey, and Defendant Regeneron Pharmaceuticals, Inc., is a biotechnology company with its headquarters in Tarrytown, New York. *Id.* ¶¶ 6–7.

On February 18, 2021, Plaintiff was prescribed Dupixent to treat a flare-up of eczema. *Id.* ¶ 10. While using Dupixent between 2021 and 2023, Plaintiff began to experience symptoms of hair loss and skin depigmentation. *Id.* ¶ 11. Medical visits and biopsies confirmed these symptoms as diagnoses of Alopecia Areata and Vitiligo, respectively. *Id.* ¶¶ 12, 13; *see* Am. Compl. Ex. B, ECF No. 8-2; *see* Am. Compl. Ex. C, ECF No. 8-3. In December 2023, Plaintiff stopped using Dupixent due to the worsening side effects. Am. Compl. ¶ 14. In 2024 and 2025, Plaintiff's vitiligo continued to spread to new areas of his body and caused Plaintiff social anxiety, emotional trauma, and psychological stress. *Id.* ¶ 17. Plaintiff asserts that no treatment option for vitiligo has reversed the spread, and financial limitations have prevented access to experimental or specialist therapies. *Id.* ¶ 19. Plaintiff notified Defendant Sanofi of these effects via formal reports and email correspondence. *Id.* ¶ 15; *see* Am. Compl., Ex. C. Despite these reports, Plaintiff alleges

that Defendants failed to update warnings or adequately inform consumers and physicians of the Dupixent effects. Am. Compl. ¶ 16.

## V. ANALYSIS

Plaintiff asserts five claims against Defendants: (1) failure to warn; (2) failure to disclose known risks; (3) negligent design, testing, and marketing; (4) breach of implied warranty of merchantability; and (5) strict products liability-design defect. Am. Compl. ¶¶ 20–30, ECF No. 8.

Defendants move to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff cannot meet the *prima facie* elements of his claims. Mem. Supp. 2, ECF No. 19. Defendants argue that any claims related to alopecia areata are barred because that injury occurred more than two years before Plaintiff initiated this action. *Id.* at 7. Plaintiff concedes that the Amended Complaint involves only claims to vitiligo. Resp. Opp'n, 7, ECF No. 24 ("Vitiligo—not alopecia—is the relevant injury."). Accordingly, the Court will only analyze the sufficiency of the Amended Complaint as it relates to Plaintiff's vitiligo claims.

### A. Count One – Failure to Warn

Defendants argue that Count One fails under the learned intermediary doctrine, under which a defendant's duty to warn runs to the prescribing healthcare providers, not to the plaintiff. Mem. Supp. 10. Furthermore, Defendants argue that U.S. Food and Drug Administration ("FDA") regulations preempt Plaintiff's state-law failure to warn claim. *Id.* at 12. Specifically, Defendants argue that Plaintiff's allegations fail to meet the FDA's high standard for what qualifies as newly acquired information to support a change to the Dupixent label under the "changes being effected" ("CBE") framework. *Id.* at 12–13. Plaintiff argues his claims are not preempted because Defendants should have acted upon the newly available information under the CBE framework. Resp. Opp'n 9–10. Plaintiff continues to assert that Defendants failed to warn the prescribing

dermatologist of autoimmune depigmentation risks, depriving the physician of necessary information to assess and discuss Dupixent's dangers. *Id.* at 11.

"The basic analytical framework applicable to products liability claims in Virginia[2] is the same whether a plaintiff is bringing a negligence or breach of implied warranty action." *Knapp v. Zoetis, Inc.*, 2022 WL 989015, at *5 (E.D. Va. Mar. 31, 2022) (quoting *Benedict v. Hankook Tire Comp. Ltd.*, 295 F. Supp. 3d 632, 637 (E.D. Va. 2018)). "Virginia law recognizes three types of products liability actions: design defect, manufacturing defect, and failure to warn." *Id.* (citing *Powell v. Diehl Woodworking Mach., Inc.*, 198 F. Supp. 3d 638, 633 (E.D. Va. 2016)).

> [T]o prevail on a failure to warn claim, Plaintiff must establish that Defendant "(1) knew or had reason to know that the product was or was likely to be dangerous for its intended use, (2) had no reason to believe that those for whose use the product was supplied would realize its dangerous condition, and (3) failed to exercise reasonable care to inform them of its dangerous condition or of the facts which made it likely to be dangerous."

*Dodson v. C.R. Bard, Inc.*, 2020 WL 7647631, at *6 (E.D. Va. Dec. 23, 2020) (quoting *Sutherlin v. Lowe's Home Ctrs., LLC*, 2014 WL 7345893, at *26 (E.D. Va. Dec. 23, 2014)). "[I]n the case of prescription drugs, it is the general rule that the duty of the drug manufacturer is to warn the physician who prescribes the drug in question." *Pfizer, Inc. v. Jones*, 272 S.E.2d 43, 44 (Va. 1980); *see also Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 644 (4th Cir. 1981) ("[T]he well-settled rule is that the duty an ethical drug manufacturer owes to the consumer is to warn only physicians (or other medical personnel permitted by state law to prescribe drugs) of any risks or contraindications associated with that drug."); *id.* at 644 n.1 (further noting that an ethical drug is one that is prescribed and not available over the counter). "[W]hen adequate information is

---

[2] When exercising diversity jurisdiction, as is the case here, the Court applies the substantive law of the state in which it sits. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)); *PSEG Renewable Transmission LLC v. Arentz Fam., LP*, 185 F.4th 497, 509 (4th Cir. 2026) (explaining that when a federal court's jurisdiction is pursuant to 28 U.S.C. § 1332, the court "look[s] to the decisions of the state's highest court" to resolve questions of state law").

provided to the physician, the manufacturer will not be held liable despite the physician's failure to give notice to the patient." *Talley v. Danek Med., Inc.*, 7 F. Supp. 2d 725, 730 (E.D. Va. 1998), *aff'd*, 179 F.3d 154 (4th Cir. 1999).

"[A] plaintiff must not only show that a manufacturer's warning was inadequate, but that such inadequacy affected the prescribing physician's use of the product and thereby injured the plaintiff." *Id.* "A state law challenge to FDA-approved warnings, including a tort action under state law, can thus proceed only when the defendant had the unilateral ability to change that labeling; otherwise, the claim is preempted." *Knight v. Boehringer Ingelheim Pharms., Inc.*, 984 F.3d 329, 337 (4th Cir. 2021). Companies cannot make unilateral changes to the medication guide without FDA approval, but they can make changes to the physician label under changes-being-effected ("CBE") when there is "newly acquired information about the evidence of a causal association between the drug and a risk of harm." *Id.* (citing 21 C.F.R § 314.70(b); 21 C.F.R. § 314.70(c)(6)(iii)(A)).

Regarding the learned intermediary doctrine, Plaintiff alleges that Defendants failed to warn both him and his physicians. Am. Compl. ¶ 20; Resp. Opp'n 11. This argument avoids the learned intermediary bar. *See Dodson*, 2020 WL 7647631, at *9 (finding as sufficient for the pleading stage the plaintiff's allegation that the defendant was liable "by not informing medical providers . . . about the problems associated with [the drug].").

Additionally, Plaintiff plausibly alleges that Defendants had newly available information that should have triggered a change under the CBE regulation. Plaintiff alleges there were case studies, post-market surveillance, and adverse event reports that Dupixent could cause vitiligo. Am. Compl. ¶ 23. Plaintiff included reports discussing this potential link. *See* Am. Compl. Ex. D, ECF No. 8-4. Furthermore, Plaintiff reported adverse events directly to Defendants. *See* Am. Compl. Ex. C, ECF No. 8-3. The Court finds that at the pleading stage, this is sufficient. *See*

*Barry v. Novartis Pharms. Corp.*, 2022 WL 2373452, at *9 (E.D. Va. June 30, 2022) ("[A]lthough Plaintiff does not expressly allege a change in type or increase in frequency or severity of [the drug's] risks, the Court can infer from the Complaint—construed in the light most favorable to Plaintiff, the non-movant—that Defendant had newly acquired information as defined by the CBE regulation.").

While there may be issues of preemption or sufficiency of the evidence to establish newly available information, it is difficult to decide those at the pleading stage. Rather, addressing the interplay between the CBE regulations and Plaintiff's state-law tort claim is an issue best decided at summary judgment. *See, e.g., Barry*, 2022 WL 2373452, at *10 (noting that "multiple federal courts . . . have addressed the CBE regulation at issue in *Knight* and declined to dismiss failure-to-warn claims on preemption grounds, finding this argument more appropriate for summary judgment."). Accordingly, the Motion to Dismiss is denied as to Count One.

**B. Count Two – Failure to Disclose Known Risks**

Count Two alleges that Defendants "knew or should have known through case studies, post-market surveillance, and adverse event reports that Dupixent could cause or trigger . . . [v]itiligo," and that "Defendants willfully or negligently concealed such risks." Am. Compl. ¶¶ 23–24. Defendants challenge Count Two on the same preemption and learned intermediary grounds that they raise against Count One. Mem. Supp. 10–18.

The Court need not reach the parties' arguments, because Virginia does not recognize "failure to disclose known risks" as a distinct products liability claim.[3] Courts in this District

[3] Despite neither party raising this issue, the Court will nonetheless address it in dismissing Count Two. The Court recognizes that before dismissing a claim *sua sponte*, it ordinarily must afford "notice and an opportunity to amend the complaint or otherwise respond." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 291 (4th Cir. 2021). That would be a fruitless exercise here, where the deficiency is that the purported claim simply does not exist. The dismissal deprives Plaintiff of no theory of recovery, because Count Two's allegations remain before the Court through Count One.

dismiss claims that fall outside of the three product liability defect categories. *See Sykes v. Bayer Pharms. Corp.*, 548 F. Supp. 2d 208, 215 (E.D. Va. 2008) (dismissing claims for "failure to test"); *Powell*, 198 F. Supp. 3d at 633–34 (E.D. Va. 2016) (dismissing claims premised for failure to test and recall).

Furthermore, Count Two restates allegations of Count One's failure to warn claim.[4] *See* Am. Compl. ¶¶ 20–22. Both parties brief the two counts together as failure to warn claims. *See* Mem. Supp. 10–18; Resp. Opp'n 8–11. Because Count Two asserts a claim not recognized in Virginia and rests on the same allegations as Count One, it is duplicative. Furthermore, dismissal does not harm Plaintiff because his failure to warn theory, including Defendants' alleged knowledge of the risk, proceeds under Count One. Accordingly, the Court dismissed Count Two.

**C. Count Three – Negligent Design, Testing, and Marketing**

Count Three alleges that Defendants "negligently designed, tested, manufactured, and marketed" Dupixent without proper evaluation and failed to properly monitor post-approval adverse effects or update their risk disclosures. Am. Compl. ¶¶ 25–26. Defendants argue that dismissal is warranted because Plaintiff fails to identify a design defect, causation, or an alternative design. Mem. Supp. 18–22. Plaintiff argues that the Amended Complaint sufficiently alleges how Defendants failed to study, recognize, or disclose known risks associated with immune pathway disruption. Resp. Opp'n 12.

[4] Even in construing the Amended Complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court does not read Paragraph 24's allegations that Defendants "willfully or negligently concealed such risks" to state a separate claim. Whether characterized as willful or negligent, the conduct Paragraph 24 alleges is the same omission underlying Count One: Defendants' failure to warn Plaintiff or his prescribing physicians of known adverse reactions. *Compare* Am. Compl. ¶¶ 23–24, *with id.* ¶¶ 20–21. And to the extent that Plaintiff intends to assert a fraud claim, he has not pleaded one with the particularity Federal Rule of Civil Procedure 9(b) requires. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (requiring a plaintiff to plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" (citation omitted)).

"To prevail on a negligent design defect claim under Virginia law, 'the plaintiff must prove that the product contained a defect [that] rendered it unreasonably dangerous for ordinary or foreseeable use.'" *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 895, 899 (E.D. Va. 2010) (quoting *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993)). FDA approval of a drug does not, by itself, preempt an action for defective design. *See id.* at 900 (explaining that although continued FDA approval "is strong evidence of reasonableness" in a drug's design, "this fact alone does not resolve the claim"). A plaintiff still "must contend that [the defendant] could have designed the product differently before putting it into the stream of commerce, 'or that such a design is even feasible.'" *Dodson*, 2020 WL 7647631, at *5 (quoting *Ball v. Takeda Pharm. Am., Inc.*, 963 F. Supp. 2d 497, 505 (E.D. Va. 2013)).

The Court finds that Plaintiff's allegations in support of this count are conclusory and do not sufficiently state a claim. Plaintiff alleges that "Dupixent is defectively designed in that its immune pathway targeting (IL-4 and IL-13 blockade) can lead to unintended autoimmune consequences like vitiligo," and that "[s]afer alternatives . . . were available." Am. Compl. ¶¶ 29–30. Plaintiff's claim is insufficient because he does not suggest what those alternatives would be or provide any facts supporting his claim that there was a safer alternative. *See Knapp*, 2022 WL 989015, at *5 ("[A] plaintiff must state facts showing that 'an alternative design is safer overall than the design used by the manufacturer.'" (citing *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.2d 462, 471 (Va. 2018))).

Additionally, Plaintiff's allegations regarding the IL-4 and IL-13 blockage suggest a defect in the fundamental design of Dupixent. *See* Am. Compl. ¶ 29. While the Court is not equipped to determine this at the pleading stage, Plaintiff's own attached studies suggest that Dupixent's essential functioning was related to its blocking of IL-4 and IL-13 pathways. *See* Am. Compl. Ex. H, ECF No. 8-8. Beyond this, Plaintiff has only included a bare allegation of a defect, which is a

legal conclusion, unsupported by facts, thus warranting dismissal. *See Knapp*, 2022 WL 989015, at *5 ("[E]ven at the pleading stage, a plaintiff must allege sufficient facts 'indicating how a product may have been designed improperly.'" (quoting *Porter v. DepPuy Orthopedics, Inc.*, 2019 WL 3979656, at *8 (E.D. Va. Aug. 6, 2019)).

Accordingly, the Motion to Dismiss is granted with respect to Count Three.

**D. Count Four – Breach of Implied Warranty of Merchantability**

In Count Four, Plaintiff alleges that Defendants breached the implied warranty of merchantability by marketing Dupixent as safe for eczema patients, even though the drug "was not fit for that purpose due to its undisclosed risk profile," and that he relied on those representations to his detriment. Am. Compl. ¶¶ 27–28. Similar to Count One, Defendants argue that Plaintiff's allegations are insufficient, and that the learned intermediary theory would bar Plaintiff's claims. Mem. Supp. 23. Plaintiff argues that the allegations are sufficient because he alleges that Dupixent was sold without the adequate and necessary warnings to ensure safe usage. Resp. Opp'n 12.

Under Virginia law, "[t]he warranty cause of action has two elements: (1) the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) the unreasonably dangerous condition existed when the goods left the manufacturer's control." *Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1114 (4th Cir. 1988) (citing *Bly v. Otis Elevator Co.*, 713 F.2d 1040, 1043 (4th Cir. 1983) (applying Virginia law)). "A product is 'unreasonably dangerous' if defective (1) in assembly or manufacture, (2) if imprudently designed, or (3) if not accompanied by adequate warnings about its hazardous properties." *Id.* (citing *Bly*, 844 F.2d at 1043).

Here, Plaintiff alleges that Defendants breached the implied warranty of merchantability by marketing Dupixent as "safe for long-term use in Eczema patients but was not fit for that purpose due to its undisclosed profile." Am. Compl. ¶ 27. By alleging this breach of implied

warranty claim "independent of negligence," Reply 12, the Court finds that Plaintiff states a claim. Furthermore, by alleging that Defendants failed to warn his physicians, the learned intermediary bar is inapplicable. *See supra* Section V.A.

Accordingly, the Motion to Dismiss is denied as to Count Four.

**E. Count Five – Strict Products Liability-Design Defect**

In Count Five, Plaintiff alleges that Dupixent's design can cause autoimmune conditions such as vitiligo, and that safer alternatives or adequate warnings were available but not employed. Am. Compl. ¶¶ 29–30. Defendants argue that Count Five, as pleaded, asserts a strict liability claim that Virginia does not recognize. Mem. Supp. 24.

The Court agrees. *See* Am. Compl. 4 (captioning Count Five "Strict Products Liability-Design Defect"); *id.* ¶ 29 (alleging that Dupixent "is defectively designed" without alleging negligence). Virginia generally does not recognize a cause of action for strict liability in tort. *See Sykes,* 548 F. Supp. 2d at 214 ("[C]ourts applying Virginia law have not applied the doctrine of strict liability in product liability cases." (citing *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 57 n.4 (Va. 1988))). Because strict liability is not actionable as a tort claim in Virginia, Count Five is dismissed.

## VI. CONCLUSION

For the reasons detailed above, the Court granted Defendants' Motion to Dismiss as to Counts Two, Three, and Five, dismissing those claims. *See* Order, ECF No. 26. The Court denied Defendants' Motion to Dismiss as to Counts One and Four. *See id.* Accordingly, this matter will proceed on the basis of Counts One and Four.

/s/ RCY
Roderick C. Young
United States District Judge

Date: November 16, 2026
Richmond, Virginia